JAMES C. DAVIS, DIRECTOR GENERAL, AND SEABOARD AIR LINE RAILWAY COMPANY v. C. B. GILL & CO.

(Filed 22 April, 1925.)

**Railroads—Demurrage—Rule—Interstate Commerce Commission—Findings—New Trials.**

In an action by a railroad company to recover demurrage charges on an interstate carload shipment, the determinative question was whether the demurrage charges began to accrue at the time of notice or constructive placement or at the time of the actual placement of the cars, the defendant contending that by special agreement with the plaintiff the rule of constructive placement as required by the rule of the Interstate Commerce Commission did not apply, and the plaintiff that this rule was

enforceable to prevent discrimination among shippers and would neces-
sarily control any agreement to the contrary: *Held*, it was necessary
for a determination of the case that there should have been a finding as
to whether a condition preventing the placement of the cars was attrib-
utable to the consignee.

APPEAL by plaintiffs from *Daniels, J.,* at February Term, 1924, of
WAKE.

Civil action to recover $804.53, demurrage charges, which, it is
alleged, had accrued on nine "order notify" shipments of freight con-
signed or deliverable to the defendant at Raleigh, N. C.

From a verdict and judgment denying full recovery, plaintiffs appeal.

*Murray Allen for plaintiffs.*
*J. W. Bunn and Banks Arendell for defendant.*

STACY, C. J. All liability is not denied, but there is a difference
between the parties as to the length of time properly chargeable against
the defendant for the accrual of demurrage.

Defendant contends that he is only liable for $110.21, the demurrage
which accrued on the nine cars in question from the time they were
placed on the sidetrack at his warehouse until released by him. The
plaintiffs, on the other hand, contend that they are entitled to recover
$804.53, the amount of demurrage which accrued between the time the
defendant was notified of the arrival of the cars and the time they were
unloaded, deducting therefrom the free time allowed by the demurrage
rules. In short, the question for decision is: When did demurrage begin
to accrue, at the time of notice and constructive placement, or at the
time of actual placement of the cars? The plaintiffs say at the time of
notice and constructive placement. The defendant says at the time of
actual placement under the arrangement which he had with the plain-
tiffs. The trial court took the defendant's view of the matter and
instructed the jury accordingly. The verdict was for $110.21. Plain-
tiffs appeal, assigning errors.

It was in evidence that the following rule relating to demurrage had
been approved by the Interstate Commerce Commission and was in force
at the time the present charges accrued in February and March, 1920:

"Rule 5—Placing Cars for Unloading. Section A.—When delivery
of a car consigned or ordered to an industrial interchange track or to
other than a public delivery track cannot be made on account of the
inability of the consignee to receive it, or because of any other condi-
tion attributable to the consignee, such car will be held at destination or,
if it cannot be reasonably accommodated there, at the nearest available
point, and written notice that the car is held and that this railroad is

unable to deliver will be sent or given to the consignee. This will be considered constructive placement."

For several years prior to 1920 the defendant had an arrangement with the plaintiffs whereby all "order notify" shipments consigned or deliverable to the defendant at Raleigh, N. C., were to be placed on the spur-track in front of the defendant's warehouse without first requiring a surrender of the original bill of lading; and demurrage, if any, on cars held for loading or unloading was to be computed on the basis of the average time of detention, under an "average agreement" entered into between the parties.

By reason of some dissatisfaction occasioned by the defendant's delay in surrendering one or more of the original bills of lading on "order notify" shipments before taking charge of the cars placed on his siding, he was notified by plaintiff's agent at Raleigh that the practice of placing "order notify" shipments on the spur-track in front of his warehouse without first requiring a surrender of the original bill of lading would be discontinued.

After some delay, due to the conflicting contentions of the parties, the defendant took the matter up with plaintiff's freight traffic manager at Norfolk, Va., and effected an arrangement whereby the former custom of placing all such shipments on the sidetrack in front of his warehouse without first requiring a surrender of the original bill of lading would be continued on condition that "outstanding demurrage under the average demurrage agreement will be settled promptly after 1 April." This was assented to by the defendant.

Part of the demurrage on the nine cars in question accrued while the parties were negotiating with respect to the placing of these "order notify" shipments on the sidetrack in front of defendant's warehouse. It is conceded that a portion of the demurrage accrued on said cars after they were finally placed on defendant's sidetrack, and this is not in dispute. Defendant says he agreed to settle the outstanding demurrage on the nine cars in question under the average demurrage agreement, and that said agreement calls for the payment of charges on cars detained on the sidetrack for loading or unloading, and no more. Plaintiffs deny the correctness of this contention, and reply further by saying that it can make no difference whether the particular demurrage is covered by the average agreement or not, as the duty to collect it is imposed by law, and hence it may not be waived or remitted either by contract or by custom, for such would result in discrimination among shippers.

The position of the plaintiffs in regard to a like contention where no cause for the delay was attributable to the carrier or its agents was upheld by us in the case of *Davis v. Storage Co.,* 186 N. C., 676 (peti-

tion for writ of certiorari denied by the Supreme Court of the United States 14 April, 1923, 188 N. C., 836). Under the principles announced in this authority, where the matter is discussed at length and need not be repeated here, it appears necessary to remand the instant case for another hearing, to the end that it may be determined whether the delay in placing the nine cars in question on the spur-track in front of the defendant's warehouse was occasioned by any "condition attributable to the consignee."

New trial.